A10A0671. GLYNN-BRUNSWICK MEMORIAL HOSPITAL
AUTHORITY v. BENTON.
(693 SE2d 566)

BLACKBURN, Presiding Judge.

After she slipped and fell in the lobby of the Outpatient Care Center at the Southeast Georgia Medical Center, Jean Benton initiated the current premises liability action against Glynn-Brunswick Memorial Hospital, d/b/a Southeast Georgia Health System (hereinafter "the Hospital"). The Hospital now appeals from the trial court's denial of its motion for summary judgment, arguing that Benton has presented no evidence to support her assertion that her fall resulted from a dangerous condition on the hospital's premises. We agree, and therefore reverse the trial court's order.

> We review the trial court's grant of summary judgment de novo to determine if the evidence demonstrates any genuine issue of material fact. To prevail, the moving party must demonstrate that there are no genuine issues of any material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, support judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.

(Punctuation omitted.) *Prescott v. Colonial Properties Trust.*[1] Where the defendant "discharges this burden, the [plaintiff] cannot rest on

---

[1] *Prescott v. Colonial Properties Trust*, 283 Ga. App. 753, 753-754 (642 SE2d 425) (2007).

[his] pleadings, but rather must point to specific evidence giving rise to a triable issue." *Henson v. Ga.-Pacific Corp.*[2]

Viewed in the light most favorable to Benton, as the nonmovant, the record shows that at approximately 10:00 a.m. on January 8, 2008, Benton had an appointment with a podiatrist whose office was located in the Outpatient Care Center. According to Benton, it was raining lightly that morning and, on the way to her appointment, she traveled through the lobby of the building without incident. After her appointment, as she walked through the lobby to exit the building, Benton slipped on the tile floor and fell, severely injuring her right shoulder. Benton testified at her deposition that as she was walking, "just all of a sudden the surface of the floor changed. I mean it was — I mean it was like that and it was — my foot was gone." When questioned further, Benton stated that the floor "was like slick . . . I mean slick slick. . . . I don't know what . . . would make a floor [slick like that], but . . . whatever it was there should not have been part of the floor." When asked if the floor was wet when she fell, Benton responded that she did not "know the difference between wet and slick," and that she did not know what made the floor slick. She further testified, however, that when she fell she did not see any water or other liquid on the floor and that her clothes were not wet after the fall.

The security guard on duty in the lobby at the time of the incident averred that as he made his usual rounds on the morning in question, he inspected the premises for any dangerous conditions, and he found none. He inspected the area where Benton fell approximately 15 minutes before her fall, and found the floor to be completely dry and free of foreign objects or hazards of any kind. The security guard returned to the area to assist Benton after she fell and stated that, when asked, Benton could not describe what had caused her to fall. After assisting Benton, the security guard again inspected the area but saw no water, no foreign substances, and no foreign objects on the floor.

The supervisor of the Hospital's Environmental Services Department submitted an affidavit stating that it was customary practice for the department to clean and check each public area of the hospital three times per shift and that the department kept a log of such inspections. On the date in question, the department checked the area where Benton fell at approximately 6:30 a.m., 10:15 a.m., and 2:00 p.m. As evidenced by the log submitted with the supervisor's affidavit, each of these inspections showed that the area was clean and that the floor did not have any water on it.

---

[2] *Henson v. Ga.-Pacific Corp.*, 289 Ga. App. 777, 778 (658 SE2d 391) (2008).

Based on the foregoing evidence, the Hospital moved for summary judgment on the grounds that Benton lacked any evidence to support her claim that her fall was caused by a dangerous condition on the Hospital's premises. The trial court denied that motion, but granted the Hospital's request for a certificate of immediate review. The Hospital thereafter filed an application for an interlocutory appeal, which this Court granted. This appeal followed.

Although "[a]n owner or occupier of land has a statutory duty to keep its approaches and premises in a reasonably safe condition for invitees . . . an owner or occupier of land is not an insurer of the safety of its invitees." (Punctuation and footnote omitted.) *Bryant v. DIVYA, Inc.*[3] Thus, "[t]he threshold point of inquiry in a slip and fall case is the existence of a hazardous condition on the premises. Proof of a fall, without more, does not create liability on the part of a proprietor or landowner[, because] [i]t is common knowledge that people fall on the best of sidewalks and floors." (Citations and punctuation omitted.) *Flagstar Enterprises v. Burch.*[4] See also *Henson*, supra, 289 Ga. App. at 779 (1) (in premises liability cases, "[i]t is not sufficient to simply show that an unfortunate event occurred and the plaintiff was injured"); *Dixon v. Infinity Broadcasting East*[5] (in slip and fall cases, "[t]he mere showing of the occurrence of an injury does not create a presumption of negligence" on the part of the landowner). Where the plaintiff cannot show the existence of a hazardous condition, she cannot prove the cause of her injuries and "there can be no recovery because an essential element of negligence cannot be proven." *Pennington v. WJL, Inc.*[6]

To create a question of fact as to the existence of a hazardous condition, a "plaintiff cannot rely upon speculation" and she must "prove more than the existence of a slick or wet floor." *Flagstar Enterprises,* supra, 267 Ga. App. at 858. "Guesses or speculation which raise merely a conjecture or possibility [of a hazardous condition] are not sufficient to create even an inference of fact for consideration on summary judgment." *Brown v. Amerson.*[7] Rather, the plaintiff must produce evidence "of what foreign substance, condition, or hazard caused [her] to slip and fall." *Mansell v. Starr Enterprises/Texaco.*[8] This Benton failed to do.

Although Benton testified that she slipped because the floor was extremely slick, she also admitted that she saw nothing on the floor

[3] *Bryant v. DIVYA, Inc.*, 278 Ga. App. 101, 102 (628 SE2d 163) (2006).

[4] *Flagstar Enterprises v. Burch*, 267 Ga. App. 856, 856-857 (600 SE2d 834) (2004).

[5] *Dixon v. Infinity Broadcasting East*, 289 Ga. App. 71, 73 (2) (656 SE2d 211) (2007).

[6] *Pennington v. WJL, Inc.*, 263 Ga. App. 758, 760 (1) (589 SE2d 259) (2003).

[7] *Brown v. Amerson*, 220 Ga. App. 318, 320 (469 SE2d 723) (1996).

[8] *Mansell v. Starr Enterprises/Texaco*, 256 Ga. App. 257, 258 (568 SE2d 145) (2002).

and that she did not know why the floor was slick — i.e., she did not know if the floor felt slick because there was a foreign substance thereon. Benton acknowledged, however, that following the fall she did not feel anything wet and that her clothes were not wet. Particularly in light of the testimony of the security guard and the Environmental Services Department supervisor, that inspections of the area shortly before Benton's fall revealed no hazardous condition, Benton's testimony was insufficient to create an inference that a hazardous condition, in fact, existed. See *Flagstar Enterprises*, supra, 267 Ga. App. at 858 (affirming grant of summary judgment to defendant based on fact that plaintiff's "conjecture that a 'damp film' [on restaurant floor] somehow caused his fall remains nothing more than mere speculation"); *Mansell*, supra, 256 Ga. App. at 259 (summary judgment proper where evidence showed that plaintiffs were speculating as to presence of slippery substance in parking lot based on the fact that wife fell after walking through the same); *Moore v. Teague*[9] (affirming grant of summary judgment to defendant where plaintiff "assumed" she slipped on wet floor, but testified that she did not know if floor was actually wet); *Shadburn v. Whitlow*[10] (defendant entitled to summary judgment where witnesses "believed" plaintiff fell on loose carpeting at top of stairwell, but admitted that they were not certain what caused fall).

Here, the Hospital

has shown that there is no evidence sufficient to create an issue of material fact as to [the existence of a hazardous condition on its premises], and therefore there is no evidence on which the jury could find [the Hospital] liable. It follows that the trial court erred in denying [the Hospital's] motion for summary judgment.

*Kmart Corp. v. McCollum*.[11] See also *Drew v. Istar Financial*.[12]
*Judgment reversed. Barnes and Bernes, JJ., concur.*

DECIDED MARCH 31, 2010.

Hall, Booth, Smith & Slover, Norman D. Lovein, Glenn E. Jones, for appellant.

---

[9] *Moore v. Teague*, 255 Ga. App. 220, 222 (564 SE2d 817) (2002).
[10] *Shadburn v. Whitlow*, 243 Ga. App. 555, 556 (533 SE2d 765) (2000).
[11] *Kmart Corp. v. McCollum*, 290 Ga. App. 551, 556 (659 SE2d 913) (2008).
[12] *Drew v. Istar Financial*, 291 Ga. App. 323, 324-325 (661 SE2d 686) (2008).