A10A2341. DEMPSEY v. SOUTHEASTERN INDUSTRIAL CONTRACTING COMPANY, INC. et al.

(709 SE2d 320)

DOYLE, Judge.

In this personal injury case, Mary Ann Dempsey appeals from the grant of summary judgment to Southeastern Industrial Contracting Company, Inc. ("Southeastern"), Tommy Smithberger (CEO of Southeastern), and Joseph Garrett (a Southeastern employee). Because Dempsey has failed to produce supporting evidence

giving rise to a triable issue as to the defendants' liability, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

So viewed, the record shows that on February 10, 2006, Dempsey, a driver for United Parcel Service ("UPS"), was finishing loading her truck at the beginning of her shift. She stood at a conveyor belt that carried packages to the back of her truck. As Dempsey removed packages to load onto her truck, a wire protruding from the edge of the conveyor belt caught her glove and pulled her hand into the conveyor belt roller mechanism, injuring her.

Dempsey filed this lawsuit against Southeastern and, as individuals, Smithberger and Garrett. After discovery, Dempsey focused her argument on the following allegations: the defendants failed to properly inspect and maintain a guard covering the conveyor's rollers ("transfer plate"), failed to notify UPS about the proper location of shut-off switches, and failed to warn UPS of an ongoing risk of dangerous conveyor belt snags. The trial court granted summary judgment to each defendant, and Dempsey filed this appeal.

1. Dempsey contends that the trial court erred by concluding that the defendants owed her no duty of care because she was not a third-party beneficiary of Southeastern's contract with UPS. The trial court relied on *CDP Event Svcs. v. Atcheson*,[2] which stands for the proposition that

> [a]n injured party may recover for personal injuries as a third-party beneficiary for failure to perform a contractual duty only where it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury.[3]

Based on this proposition, the trial court ruled in that case that an injured concertgoer was not owed a duty of care by the security

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).
[2] 289 Ga. App. 183 (656 SE2d 537) (2008).
[3] (Punctuation omitted.) Id. at 184 (1).

142

company hired by a concert promoter.[4] However, *CDP Event Svcs.* only narrowly addressed the question of whether the plaintiff was a third-party beneficiary of the security contract, and the Court explicitly declined to address " 'whether duty and liability arise by misfeasance [as opposed to nonfeasance] in the performance of the contract.' "[5]

Pretermitting whether *CDP Event Svcs.* controls the questions presented in this case, a judgment of a lower court may be affirmed if it is right for any reason.[6] Because Dempsey fails to point to supporting evidence giving rise to triable issues, and this failure of proof was argued below and on appeal, we affirm the grant of summary judgment on that basis.

2. *Grant of summary judgment to Southeastern.* We note at the outset that, to support a motion for summary judgment,

> a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to the evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to *specific evidence* giving rise to a triable issue.[7]

Here, it is undisputed that prior to Dempsey's February 10, 2006 injury, Southeastern had last inspected the UPS facility on December 15, 2005. At the summary judgment hearing, Dempsey's counsel conceded that he had no evidence showing that the protruding wire on the conveyor belt was present at the time of Southeastern's last inspection. And Dempsey points to no evidence that Southeastern was requested but failed to inspect the conveyor belt between the last inspection and Dempsey's injury. Thus, other than by speculation, which is not a basis for avoiding summary judgment,[8] she cannot show that Southeastern was negligent in its inspection, nor does she contend as much.

---

[4] See id. at 186-187 (1).

[5] Id. at 187 (2).

[6] See *Nat. Tax Funding v. Harpagon Co.*, 277 Ga. 41, 45 (4) (586 SE2d 235) (2003) (a judgment of a lower court may be affirmed so long as it is right for any reason); *City of Gainesville v. Dodd*, 275 Ga. 834, 838 (573 SE2d 369) (2002) (appellate courts may exercise discretion as to when to follow the "right for any reason" rule and consider grounds not addressed by the trial court).

[7] (Citations and punctuation omitted; emphasis supplied.) See *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010).

[8] See id. at 633 (2) (c) ("Summary judgment cannot be avoided based on speculation or conjecture.").

(a) Instead, Dempsey argues that Southeastern had an ongoing duty to warn UPS that protruding wires could cause injury in the future and take some preventative action or recommend a remedy. However, it is not alleged that Southeastern ever failed to inform UPS of protruding wires actually discovered, and the record shows that UPS employees were already aware that wires occasionally protruded from belts. Further, the contract did not specify that action be taken to prevent defects that had not occurred. In essence, Southeastern was contracted to discover and remedy mechanical issues as they arose, not anticipate and prevent future problems that did not yet exist. Under these facts, Dempsey cannot maintain her cause of action against Southeastern based on the protruding wire in this case.

(b) Likewise, with respect to Dempsey's argument regarding a maladjusted transfer plate covering the gap between the conveyor and rollers, Dempsey cannot survive summary judgment based on the record before us. Dempsey points to deposition testimony from her experts, who never saw the actual transfer plate at issue, concluding that the transfer plate must have been maladjusted if Dempsey's fingers were able to enter the roller under it.[9] Dempsey also cites testimony from an employee who gave a "guesstimation" that the gap between the plate and the belt was too wide, conceding that he never measured the gap. However, such conclusory and speculative testimony lacks the probative value sufficient to create a question of fact to survive summary judgment. This is because "[a]lthough an opposing party is entitled to the benefit of reasonable inferences, an inference cannot be based on mere conjecture or probability, or on evidence that is too uncertain or speculative."[10]

(c) Finally, with respect to the allegedly improper location of shut-off switches, Dempsey argues that the nearest shut-off switch — approximately ten feet away — was located too far away from her station. However, it is undisputed that the switches were installed prior to the maintenance contract with Southeastern, and Southeastern neither installed nor specified the location of the switches.

---

[9] Although not explicitly argued by Dempsey, this basis is tantamount to a res ipsa loquitur argument. "Res ipsa loquitur is an evidentiary based rule which provides for an inference of negligence to arise from the occurrence of an injury-causing incident." *Ken Thomas of Ga., Inc. v. Halim*, 266 Ga. App. 570, 573 (597 SE2d 615) (2004). One necessary element of the doctrine is that the injury "must be caused by an agency or instrumentality *within the exclusive control of the defendant*," which was not the case here. (Punctuation omitted.) Id.

[10] See *Denson Heating &c. Co. v. Oglesby*, 266 Ga. App. 147, 148 (596 SE2d 685) (2004). See *Bankers Health & Life Ins. Co. v. Fryhofer*, 114 Ga. App. 107, 110 (1) (150 SE2d 365) (1966) (evidence dependent entirely on guess or speculation is not sufficient to support a verdict). With respect to the suitability or rigidity of the transfer plate material itself, the record shows that the plate was specified by UPS and not installed or provided by Southeastern.

Moreover, the contract simply required that Southeastern was to notify UPS of "unsafe conditions with electrical components," not evaluate the components' design parameters or perform a regulatory compliance audit. Further, another UPS employee was "right at the [shut-off] switch" and able to "immediately" shut the conveyor off within one to two seconds, and other than Dempsey's speculation, there is no evidence that a switch placed closer to Dempsey would have prevented her injury. Thus, under these facts, there remains no triable issue of fact with respect to the location of the shut-off switches.[11]

3. *Summary judgment to Smithberger*. Dempsey sued Smithberger, the CEO of Southeastern, contending that he is personally liable for his personal involvement in training and delegating the inspection work to Southeastern employees.[12] We disagree.

Generally,

> an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, and an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein.[13]

Here, Dempsey argues that because Smithberger was responsible for training and dispatching Southeastern employees on their inspection and maintenance duties, he can be personally liable for some alleged oversight of those employees. However, in addition to our conclusions in Division 2, we conclude that the mere fact that an injury occurred during a period when Smithberger was responsible for employee training and dispatch is not sufficient to support an inference that the injury was caused by some actionable negligence on Smithberger's part.[14] Accordingly, the claim against Smithberger fails as a matter of law.

4. *Summary judgment to Garrett*. Dempsey also challenges the grant of summary judgment to Garrett, a Southeastern employee.

---

[11] See id. at 110-111 (1).

[12] Dempsey does not contend that Smithberger is vicariously liable as an officer of Southeastern.

[13] (Punctuation omitted.) *Beasley v. A Better Gas Co.*, 269 Ga. App. 426, 429 (2) (604 SE2d 202) (2004).

[14] See id. at 430 (2) (corporate officer's "alleged failure to provide proper training . . . is not a sufficiently direct participation in a tort . . . to expose [corporate officer] to personal liability under Georgia law"). Compare *Field Bros. Gen. Contractors v. Ruecksties*, 288 Ga. App. 674, 677-678 (2) (655 SE2d 282) (2007) (officer of construction company was liable for work he personally oversaw and helped perform as lead framer on site).

Nevertheless, the evidence is undisputed that while Garrett had "walked through" the facility as a point of contact for UPS, he had never personally performed any work on or inspection of the conveyor belt prior to Dempsey's injury. Therefore, in light of these facts and our conclusions above, we discern no reversible error.

*Judgment affirmed. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 23, 2011 —
RECONSIDERATION DENIED APRIL 6, 2011 — 

*Coppedge & Evans, Warren N. Coppedge, Jr., Allison J. Roberts*, for appellant.

*Downey & Cleveland, George L. Welborn*, for appellees.