**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

July 15, 2013

# In the Court of Appeals of Georgia

A13A0114. SEASON ALL FLOWER SHOP, INC. v. RORIE et al.

PHIPPS, Chief Judge.

We granted an application for interlocutory appeal to review the trial court's denial of a motion for summary judgment filed by Season All Flower Shop, Inc. d/b/a Pristine Chapel Lakeside in this rainy day slip-and-fall action brought by Vera Rorie and her husband Leroy Rorie. The Rories asserted that Vera Rorie was injured when she slipped and fell on the floor while walking in the foyer of the Pristine Chapel.[1] They alleged that Pristine Chapel knew of a hazardous condition on the floor but breached its duty of care to Vera Rorie. After discovery, Pristine Chapel moved for summary judgment. The trial court denied the motion and granted a certificate of immediate review. Because the evidence did not demonstrate that Pristine Chapel

---

[1] Leroy Rorie asserted a claim for loss of consortium.

exposed Vera Rorie to any unreasonable risk of harm, and Pristine Chapel was entitled to judgment as a matter of law, we reverse.

"A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant."[2]

> To prevail [at summary judgment], the moving party must demonstrate that there are no genuine issues of any material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, support judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case.[3]

Construed to support the Rories, the evidence showed that the Rories were invited to a wedding at the Pristine Chapel on January 30, 2010, at 3:00 or 4:00 p.m. Leroy Rorie had a prior engagement, so Vera Rorie drove to the Pristine Chapel alone. Vera Rorie, who was deposed, described the weather conditions that day: "it

---

[2] *El Ranchero Mexican Restaurant &c. v. Hiner*, 316 Ga. App. 115, 116, n. 1 (728 SE2d 761) (2012).

[3] *Glynn-Brunswick Mem. Hosp. Auth. v. Benton*, 303 Ga. App. 305 (693 SE2d 566) (2010).

was raining, sleeting, and snowing." She wore a dress, an overcoat, and pump-style shoes with a two-inch heel.

After Vera Rorie arrived at the Pristine Chapel, she sat in her vehicle for "maybe 15 minutes." Vera Rorie affirmed that it was still raining, sleeting, and snowing as she walked inside the building, using an umbrella, and that the ground was wet. She described what next occurred, as follows:

> So when I arrived at the chapel, there was a line in front of the door to get into the wedding. And I got in that line. And when I arrived inside the foyer, there was a round table. And that table had been placed in front of the doors so that when you walked into the chapel, the guests would sign the guestbook. And so I stood in that line and signed the guestbook and then I proceeded to go into the chapel. So I walked around the table from where I was standing. I then moved to my left to walk around the table. And as I got around to the side of the table, one of the ushers asked if I was there for the bride or the groom. And I said I was there for the groom. And then he directed me to the right door to go in on that side. And so I started to walk to the right door and slipped and fell.

She testified, "they purposely put the table there so you would have to sign in and you get directed either to the bride's side or the groom's side." Vera Rorie further testified that there were no floor mats or caution signs in the area in which she fell, and that

after she fell she remained on the floor – close to the guest book table, where she fell – until paramedics arrived.

Vera Rorie testified that the distance from the entrance door of the building to the guest book table was approximately two feet, and that she had traversed that distance without sliding. When asked whether she felt anything slippery as she walked from the guest book table to the usher, Vera Rorie testified, "I did not slide until I fell." Vera Rorie testified that when she fell, she still had on her overcoat. She surmised that she had left her umbrella near the guest book table because she was not holding it when she fell; she was certain, however, that she did not leave the umbrella outside the building before she entered.

Vera Rorie was not in the first group of guests to arrive at the wedding. She testified that when she arrived, approximately 30 minutes before the wedding was scheduled to begin, "there were [already] people in the chapel sitting," and that there were bridesmaids and groomsmen in the foyer. Vera Rorie recognized that other people had entered the building from outside, where it was wet, before she entered the building. She further testified that "there were guests coming in [the foyer] before me and after me, and they were going through the same process of going to the one door or the other," and that "[a]bsolutely nothing" obstructed her view of the floor

4

after the usher had directed her to the right-side door of the chapel. As to what made her slip and fall, the following colloquy is relevant:

Q. What caused to you [sic] slip and fall on the floor?

A. What caused me to slip and fall on the floor?

Q. Yes.

A. I don't know how to answer that. A slippery floor.

Q. What made the floor slippery?

A. The moisture from the rain, sleet, and snow.

Q. And you're sure that you slipped in some moisture?

A. I am positive I slipped in moisture.

Q. And how are you positive of that?

A. My clothes were wet. When they got me up off the floor, my clothes were soaking wet.

Q. So are you saying that there was like a puddle of water on the floor?

A. No, I am not. I am saying that when they got me up off the floor, my clothes were wet. The way that I know that, when they started to take me out to the ambulance, it was so cold outside. They had taken my coat off, and the wet clothes just clinged to me. I realized that my velour part of my dress was wet, very wet. And I had on a coat so I could not have gotten any wetness coming inside. I had on a coat. I was covered. So the moisture or the wetness that was in my dress came from being on the floor.

Q. Where was the moisture on the floor that you slipped in?

[Attorney representing the Rories]: Object to form. You can answer, if you understand the question.

By [Attorney representing Pristine Chapel]:

Q. Where in the room was it?

5

A. I don't know how to answer the question that says where is the moisture. I'm sorry. I don't know how to answer that question.

Q. You said that you slipped on some moisture that was on the floor, right; is that correct?

A. Yes.

Q. Where was that moisture in the lobby?

A. I don't know how to answer that.

Q. In relation to other things in the room, doorways, tables, where was the moisture that you slipped on?

A. Sir, I don't know how to answer that. The way I know there was moisture there was my clothes were wet. And, you know, I had slipped, I fell, and my clothes were wet.

Vera Rorie testified that the moisture on the floor was not visible to the "naked eye." And other than saying there was moisture on the floor, she was unable to provide any further description of the moisture that she claimed caused her to fall. As to the lighting conditions, she testified that it was daytime and that the foyer was "well lit."

One of the owners of the Pristine Chapel deposed that her staff had followed the company's rainy day procedures and laid down mats appropriately and put out caution signs in the foyer that day. The owner did not attend the wedding, however. Her testimony was purportedly based on photographs of the wedding which depicted mats on the floor and a caution sign in the foyer; but the referenced photographs were

not introduced as exhibits during the owner's deposition. During Vera Rorie's deposition, she was unable to authenticate pictures of the wedding, purportedly showing a mat and a caution sign on the floor of the foyer.

In denying Pristine Chapel's motion for summary judgment, the trial court concluded that there remained a genuine issue of material fact "as [to] [w]hether or not there was an 'unusual accumulation' of water on the floor upon which [Vera Rorie] slipped and fell, in an area inside the location that a reasonable person would not expect water to accumulate." The trial court found:

> [Vera Rorie] testified in her deposition . . . that she walked into Defendant's premises about 10 steps, signed a guest book on a table specifically set up for guests, turned, and fell. She did not see a puddle of water, but her skirt was soaking wet after she was put into the ambulance after the fall. There is therefore, at least circumstantial evidence that there was an 'unusual accumulation' of water in the area where [Vera Rorie] fell.

The trial court also concluded that a genuine issue of material fact remained as to Pristine Chapel's "knowledge of a hazard, or [Pristine Chapel]'s actions to inspect and prevent an unusual accumulation of water."

1. Pristine Chapel contends that the trial court erred in denying its motion for summary judgment because there was no evidence that Vera Rorie slipped and fell in an area where there had been an unusual accumulation of water. We agree.

"Although an owner or occupier of land has a statutory duty to keep its approaches and premises in a reasonably safe condition for invitees . . . an owner or occupier of land is not an insurer of the safety of its invitees."[4] "In premises liability cases, proof of a fall, without more, does not give rise to liability on the part of a proprietor, because the true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitee to an unreasonable risk of harm."[5]

"[I]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."[6]

---

[4] Id. at 307 (citation, punctuation and footnote omitted).

[5] *Drew v. Istar Financial*, 291 Ga. App. 323, 324-325 (661 SE2d 686) (2008).

[6] *Robinson v. Kroger Co*., 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997).

8

"Whether a hazardous condition exists is the threshold question in a slip and fall case."[7]

"Where the plaintiff cannot show the existence of a hazardous condition, she cannot prove the cause of her injuries and there can be no recovery because an essential element of negligence cannot be proven."[8] "Guesses or speculation which raises merely a conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment."[9] "To create a question of fact as to the existence of a hazardous condition, a plaintiff cannot rely upon speculation and she must prove more than the existence of a slick or wet floor. . . . Rather, the plaintiff must produce evidence of what foreign substance, condition, or hazard caused her to slip and fall."[10]

> Store proprietors are not liable to patrons who slip and fall on floors made wet by rain conditions unless there has been an unusual

---

[7] *Drew*, supra at 325 (1) (footnote omitted).

[8] *Glynn-Brunswick Mem. Hosp. Auth.*, supra (citation, punctuation and footnote omitted).

[9] *Mansell v. Starr Enterprises/Texaco*, 256 Ga. App. 257, 259 (568 SE2d 145) (2002) (citations and punctuation omitted).

[10] *Glynn-Brunswick Mem. Hosp. Auth.*, supra (citations and punctuation omitted).

accumulation of water and the proprietor has failed to follow reasonable inspection and cleaning procedures. . . . It is a matter of common knowledge that some water would normally be present at a place where shoppers continually pass in and out during rainy weather. Furthermore, it is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas.[11]

The Rories have not shown that the moisture in which Vera Rorie claims she fell was a hazardous condition that exposed her to an unreasonable risk of harm. Vera Rorie claimed that she fell on moisture from inclement weather, but the evidence showed that she did not see what caused her to fall because, by her own admission, the moisture was not visible. Indeed, her testimony was that *after* she fell, the wetness of her clothes led her to believe she had fallen due to moisture on the floor. But "[t]o create a question of fact as to the existence of a hazardous condition, a plaintiff cannot rely upon speculation and she must prove more than the existence of a slick or wet floor."[12] "It is a matter of common knowledge that some water would normally

---

[11] *Walker v. Sears Roebuck & Co.*, 278 Ga. App. 677, 680 (2) (629 SE2d 561) (2006) (citations, punctuation and footnotes omitted; emphasis supplied).

[12] *Glynn-Brunswick Mem. Hosp. Auth.*, supra; see *Veazey v. F. W. Woolworth Co.*, 191 Ga. App. 601, 602 (382 SE2d 411) (1989)*; Moore v. Teague*, 255 Ga. App. 220, 222 (564 SE2d 817) (2002) (affirming grant of summary judgment to defendant

be present at a place where [patrons] continually pass in and out during rainy weather."[13] Thus, even assuming that water from the inclement weather was on the floor in the area where Vera Rorie fell, "it does not prove in any measure how or why [she] slipped."[14] The Rories did not present a genuine issue of material fact as to the existence of a hazardous condition, i.e., an *unusual* accumulation of water in the area where Vera Rorie fell.[15]

Other than inferring that there was moisture on the floor in the area where she fell, Vera Rorie was unable to provide any description of the moisture that she claims caused her to fall. She did, however, decline to state that there was a puddle of water on the floor. Moreover, Vera Rorie conceded that when she fell she was still wearing her overcoat which she had worn in the inclement weather, and that she remained on

where plaintiff assumed she slipped on wet floor, but testified that she did not know if floor was actually wet); *Brown v. Amerson*, 220 Ga. App. 318, 320 (469 SE2d 723) (1996) (plaintiff's deposition testimony that she slipped on a combination of moisture from misty conditions and oil from cars previously parked there was pure speculation, supported only by her statement that she had knowledge that when there was moisture in the air and on the pavement that oil from parking lots and asphalt rise straight to the top).

[13] *Walker*, supra.

[14] *Veazey*, supra (punctuation omitted).

[15] *Walker*, supra.

the floor, near the table on which she believed she had left her umbrella (which she had used in the inclement weather), until paramedics arrived.

"Here, the [Pristine Chapel] has shown that there is no evidence sufficient to create an issue of material fact as to the existence of a hazardous condition on its premises, and therefore there is no evidence on which the jury could find [Pristine Chapel] liable. It follows that the trial court erred in denying [Pristine Chapel's] motion for summary judgment [on this basis]."[16]

---

[16] *Glynn-Brunswick Mem. Hosp. Auth.*, supra at 308 (citations, punctuation and footnotes omitted) (trial court erred in denying hospital's motion for summary judgment where it was raining lightly the morning that plaintiff traveled through lobby to enter building; plaintiff testified that as she walked back through lobby to exit building, she slipped because floor was extremely slick, but admitted that she saw nothing on the floor and did not feel anything wet and that her clothes were not wet; security guard testified that inspection of the area shortly before plaintiff's fall revealed no hazardous condition). See *Hayward v. The Kroger Co.*, 317 Ga. App. 795, 798-800 (3) (a), (b) (733 SE2d 7) (2012) (affirming grant of summary judgment to grocery store in rainy day slip-and-fall case; pretermitting whether grocery store owner was negligent in failing to follow its rainy day procedures satisfactorily, the evidence failed to show that there was an unusual accumulation of water at the particular spot where plaintiff fell notwithstanding rains which preceded the fall; although plaintiff testified that *after* she fell she noticed that her coat was soaking wet, her testimony as to the condition of the floor was merely that it was "damp"); *Drew*, supra at 325 (1), 327 (2) (grant of summary judgment to building owner affirmed where plaintiff presented no evidence that water puddle caused by rainwater which plaintiff did not see prior to stepping in it and slipping and falling was, for a rainy day, an unusual accumulation of water at entrance to lobby of building where she worked; plaintiff presented no evidence of the puddle's size or of its depth); *Walker*, supra (grant of summary judgment to retailer in slip-and-fall case affirmed

The Rories assert that the fall occurred several feet inside the lobby and "away from the threshold of the door" to the entrance of the building, in an area where Vera Rorie would not expect to find water accumulation. This court has held: "The risk of harm imposed by some accumulation of water on the floor of business premises during rainy days is not unusual or unreasonable in itself, but is one to which all who go out on a rainy day may be exposed and which all may expect or anticipate."[17] We recognize, however, that this concept "cannot properly be applied to a portion of an interior space where an invitee has no reason to expect water to accumulate on the

where plaintiff failed to prove existence of a hazard; while plaintiff testified that after she fell she noticed water on the floor in the area where she had slipped, she could not testify, even generally, as to amount of the water that was on the floor and thus whether it was an amount that could have been considered an unusual or unreasonable accumulation beyond that encountered on a typical rainy day; store employees who inspected floor testified they did not see any water or wet spots); *Smith v. Toys "R" Us*, 233 Ga. App. 188-189, 191 (1) (504 SE2d 31) (1998) (grant of summary judgment to premises owners reversed where plaintiff described what she slipped in as a one-inch deep puddle of water which splashed as she stepped in it and fell; based, in part, on plaintiff's description of the amount of water plaintiff claimed was present, a jury would have been authorized to infer that water had been allowed to collect on the floor over an unreasonable length of time, and thus, find that premises owner had constructive or imputed knowledge of the hazard). See generally *Emory Univ. v. Smith*, 260 Ga. App. 900, 902 (581 SE2d 405) (2003) (reversing denial of hospital's motion for summary judgment; plaintiff who slipped and fell on hospital premises failed to present evidence that surface of flooring was hazardous or contributed to her fall).

[17] *Walker*, supra (citations and footnote omitted).

13

floor."[18] But "in rainy day slip-and-fall cases plaintiffs are charged with equal knowledge that water is apt to be found in *any* area frequented by people coming in from the rain outside,"[19] and not just at the "threshold" of an entrance door, as the Rories contend.

Vera Rorie conceded that it was raining, sleeting, and snowing that day when she and other guests entered the building; that the guest book table in the foyer was intentionally positioned so that guests entering the building from the inclement weather outside would have to sign in and be directed either to the bride's side or the groom's side to enter the chapel; that guests had entered the building before her; and that while she was in the foyer, other guests were being directed to either door ahead of her. Therefore, the evidence showed that Vera Rorie fell in the foyer where guests entering the building from the inclement weather continually passed in order to attend the wedding, and that this area was not one in which Vera Rorie had no reason to expect water to accumulate on the floor.[20] Accordingly, the trial court erred in

---

[18] *Dickerson v. Guest Svcs. Co.*, 282 Ga. 771, 772 (653 SE2d 699) (2007).

[19] *Hayward*, supra at 800 (3) (b) (citation and punctuation omitted; emphasis supplied); *Mansell*, supra at 258-259.

[20] See *Hayward*, supra at 795-796 (affirming grant of summary judgment to grocery store owner where patron fell in area between first and second sets of double

denying Pristine Chapel's motion for summary judgment on the basis that there remained genuine issues of material fact as to whether Vera Rorie slipped and fell in an area in which a reasonable person would not expect water to accumulate.

2. Pristine Chapel contends that because there was no unusual accumulation of water, the trial court erred by considering whether Pristine Chapel had actual or constructive knowledge of an alleged hazard. Because of our conclusion in Division 1,[21] we need not reach this issue.[22]

*Judgment reversed. Ellington, P. J., and Branch, J., concur.*

---

doors before entering shopping area); *Mansell*, supra (affirming grant of summary judgment to gas station owner where patron fell inside convenience store while he proceeded down an aisle to the restroom). Compare *Dickerson*, supra at 773 (reversing grant of summary judgment to amusement park; no determination as a matter of law could be made that a reasonable person would have anticipated that indoor area near stairs which were not in line with entrance door might get wet on a rainy day; moreover, persons wishing to enter particular area of premises could do so through another entrance).

[21] Supra.

[22] See *Hayward*, supra at 800 (3) (b) ("store proprietors are not liable to patrons who slip and fall on floors made wet by rain conditions *unless* there has been an *unusual* accumulation of water *and* the proprietor has failed to follow reasonable inspection and cleaning procedures.") (citation and punctuation omitted; emphasis in original); *Drew*, supra at 326 (2) ("A proprietor's constructive knowledge of . . . a hazard can be shown either by evidence that an employee of the proprietor was in the immediate area of the hazard and could have seen and removed it, or by evidence that the proprietor failed to exercise reasonable care in inspecting the premises.").