**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 4, 2017**

# In the Court of Appeals of Georgia

A17A0880. WAL-MART STORES EAST L. P. v. BENSON.

ELLINGTON, Presiding Judge.

In this premises liability action, Catherine Benson sued Wal-Mart Stores East L. P. and Scott Ferrell in the State Court of Gwinnett County seeking damages for injuries sustained when she slipped and fell while shopping at a Wal-Mart. Following this Court's grant of their application for interlocutory appeal, Wal-Mart and Ferrell appeal from the trial court's denial of their motion for summary judgment contending, among other things, that there is no evidence that Wal-Mart had superior knowledge of any hazardous condition and that there is no evidence that Ferrell, a store manager, directed, participated, or cooperated in any act leading to Benson's fall. We reverse for the reasons set forth below.

A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant [or denial] of summary judgment, we construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences. The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. Our review of the grant or denial of a motion for summary judgment is de novo.

(Citations and punctuation omitted.) *Johnson v. Omondi*, 294 Ga. 74, 75-76 (751 SE2d 288) (2013).

So viewed, the evidence shows the following. On the afternoon of July 5, 2013, Benson slipped and fell in a Wal-Mart in Rome, Georgia. It had been raining earlier in the day. Benson entered the store, where the floor was dry, walked down a nearby aisle, and slipped. According to Benson, one of her feet went forward, and the other back, and she did a "split," falling down on one knee and then backwards on to the floor. She did not see anything on the floor before she fell. She testified, however, that she landed in a "clear . . . liquid" substance, and that her pants were wet after she fell.

2

Wal-Mart did not have camera coverage of the exact location of Benson's fall. The record contains surveillance video footage showing the vestibule and portions of the aisles near the entrance of the store from approximately an hour before, and shortly after, Benson's fall. On the video, Benson can be seen entering the store, walking across the floor mats and past the caution cones placed inside the entrance, and then down an aisle to her right, where she fell off view of the camera.

The evidence also showed that the Wal-Mart location was a large commercial establishment selling groceries, among other products, with a high volume of customer traffic. Wal-Mart's policy required its employees to keep a look out for and to immediately address spills or other hazards, and its maintenance personnel were trained to circulate through the store and perform any necessary cleaning and maintenance. On rainy days, the store may place caution cones at the front end of the store and place mats at the front entrance to help prevent slip and fall accidents. Employees were also trained to "dry mop" the vestibule and aisles as necessary. According to the testimony of a Wal-Mart manager then employed at the store at issue, these policies were in effect and being followed on the date of Benson's fall.

The surveillance video shows Wal-Mart employee Lena Brand beginning to mop the aisle where Benson fell 24 to 26 minutes before the fall. Brand's testimony

3

showed that on rainy days it was her normal practice to dry mop the vestibule as well as the aisle where Benson fell. The surveillance video, consistent with Brand's testimony, shows her repeatedly dry mopping the vestibule and nearby aisles, sometimes going out of view of the camera in the process. According to Brand, she inspected for hazards while dry mopping, and, if there had been any clear liquid on the floor, she would have seen it and mopped it.

"[I]n order to recover for injuries sustained in a slip-and-fall action, an invitee must prove (1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co*., 268 Ga. 735, 748-749 (2) (b) (493 SE2d 403) (1997). As to the second prong, "the plaintiff's evidentiary proof . . . is not shouldered until the defendant establishes negligence on the part of the plaintiff -- i.e., that the plaintiff intentionally and unreasonably exposed self to a hazard of which the plaintiff knew or, in the exercise of ordinary care, should have known." Id. at 749 (2) (b).

Stated another way,

the true basis for liability is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an

4

unreasonable risk of harm. In order to recover, the plaintiff must prove that the defendant had superior knowledge of a dangerous condition that was unknown to the plaintiff and that caused the plaintiff's injuries.

(Citations and punctuation omitted.) *Adamchick v. Cracker Barrel Old Country Store, Inc.*, 281 Ga. App. 677, 678 (637 SE2d 44) (2006).

1. Wal-Mart contends that the trial court erred in denying its motion for summary judgment because there is no evidence that it had superior knowledge of any hazardous condition. As Benson conceded below, there is no evidence that Wal-Mart had actual knowledge of the alleged hazard. If a defendant does not have actual knowledge of the alleged hazard,

> the case turns on whether constructive knowledge of the alleged hazard can be imputed to the owner/occupier. Constructive knowledge can be established in two ways. First, constructive knowledge can be demonstrated by showing that an employee was positioned in the immediate vicinity and had the opportunity and means to discover and remove the hazard. Second, constructive knowledge may be shown by evidence that the alleged hazard was present for such a length of time that it would have been discovered had the proprietor exercised reasonable care in inspecting the premises.

*Blocker v. Wal-Mart Stores, Inc.*, 287 Ga. App. 588, 589-590 (651 SE2d 845) (2007).

5

However, "to withstand a motion for summary judgment, the plaintiff need not show how long the hazard had been present unless the owner has first demonstrated its inspection procedures." (Punctuation and footnote omitted.) *Benefield v. Tominich*, 308 Ga. App. 605, 609 (1) (708 SE2d 563) (2011).

(a) The evidence does not show, nor does Benson contend, that there was any Wal-Mart employee in the area who had the opportunity and means to remove the alleged hazard after the aisle was mopped by Brand. Benson argues, however, that a jury could conclude that Brand caused or exacerbated the hazardous condition. See generally *Gilbert v. Auto. Purchasing Serv.*, 254 Ga. App. 770, 771 (563 SE2d 906) (2002) ("[O]ne who creates a dangerous condition on his property has constructive knowledge of the danger.") (footnote omitted). The surveillance video shows that, before mopping the aisle where Benson fell, Brand put some white material under the mop. Benson argues that a trier of fact could conclude that Brand used the material, which Benson contends to have the appearance of commercial toilet paper, because her mop was saturated with water. Benson posits that, if Brand's mop was saturated, she would have been spreading water, nor drying the floor. The evidence does not show what material Brand placed under the mop or why she placed it there, and Benson's argument that the mop was saturated and that Brand's actions caused or

6

contributed to the alleged hazard are based on speculation. "[G]uesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." (Punctuation and footnote omitted.) *Barclay v. Stephenson*, 337 Ga. App. 365, 368 (1) (787 SE2d 322) (2016). Thus, there is no evidence that Wal-Mart had constructive knowledge of the alleged hazard because Brand created or contributed to the hazard.

(b) Wal-Mart contends that it is entitled to summary judgment based on its lack of constructive knowledge of the alleged hazard because the evidence showed that it instituted and followed a reasonable inspection procedure.

> [S]ummary adjudication as to constructive knowledge arising from the duty to inspect is not authorized absent plain, palpable and undisputable proof that customary inspection procedures or cleaning practices were in place, were actually followed and were adequate to guard against known or foreseeable dangers at the time of the patron's alleged injuries.

(Citations and punctuation omitted.) *Burnett v. Ingles Markets*, 236 Ga. App. 865, 867 (514 SE2d 65) (1999). "Whether an inspection procedure is reasonable as a matter of law varies case-to-case, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the

7

store's location." (Citation and punctuation omitted.) *Food Lion, LLC v. Walker*, 290 Ga. App. 574, 576 (1) (660 SE2d 426) (2008).

Benson maintains that whether Brand mopped the area where she fell remains an issue of fact because that portion of the aisle is not shown on the video. However, in light of the testimony of Brand and the manager, in addition to video showing Brand mopping down the aisle in the direction where Benson fell, the evidence shows only that Brand inspected and mopped the area of the fall. Benson also argues that, even if the floor where she fell had been inspected and mopped less than a half hour beforehand, the reasonableness of Wal-Mart's inspection procedure remains an issue for the jury because the fall occurred in a high traffic area of the store where groceries were located. As we have said, "[t]he nature of a supermarket's . . . business creates conditions which cause slip and falls to occur with some frequency. Under those circumstances, we have held that premises owners have a duty to inspect with greater frequency." (Citation and punctuation omitted.) *Food Lion, LLC v. Walker*, 290 Ga. App. at 576 (1). And "[w]hen a proprietor has notice of the risk of a particular hazard, we have found that a jury question arises as to the reasonableness of a store's inspection procedure even when an inspection was performed 15 minutes before the plaintiff's fall." Id.

Here, the origin and composition of the clear liquid on which Benson slipped is unknown. There is, however, no evidence that the alleged hazard was associated with any of the products sold on the premises or that Wal-Mart was then aware of a specific hazard to its customers other than that which might be posed by an accumulation of rainwater. See id. (where plaintiff slipped on a mixture of water and chicken blood, and defendant supermarket knew its fresh chicken was on sale and that it inevitably dripped a mixture of blood and water on the floor, an issue of material fact remained as to whether the supermarket's inspection procedures were reasonable notwithstanding that a manager had come through the area where plaintiff fell 15 to 20 minutes beforehand and saw no wetness on the floor); *Shepard v. Winn Dixie Stores*, 241 Ga. App. 746, 748-749 (1) (527 SE2d 36) (1999) (inspection may be required more frequently than every 30 minutes "[w]hen a supermarket fills a table with crushed ice and produce, knowing that customers will remove the produce and likely cause at least some ice to fall on the floor[.]").

Because it had been raining earlier in the day, a trier of fact could conclude that Wal-Mart was on notice that its customers would track rainwater into the store. See, e. g., *Season All Flower Shop, Inc. v. Rorie*, 323 Ga. App. 529, 534 (746 SE2d 634) (2013) ("It is a matter of common knowledge that some water would normally be

9

present at a place where shoppers continually pass in and out during rainy weather.") (footnote and punctuation omitted). Nevertheless, "[i]t is not the duty of persons in control of such buildings to keep a large force of moppers to mop up the rain as fast as it falls or blows in, or is carried in by wet feet or clothing or umbrellas." (Footnote and punctuation omitted.) Id. See *Walker v. Sears Roebuck & Co.*, 278 Ga. App. 677, 680 (1) (629 SE2d 561) (2006) (accord). Pursuant to Wal-Mart policy, Brand dry mopped the floor and aisles near the entrance to guard against an accumulation of water. Although most of her efforts, as shown by the video, were devoted to dry mopping the floor in the immediate area of the entrance and vestibule, she also inspected and dry mopped the aisle where Benson fell no more than 26 minutes before her fall. There is no evidence of an unusual accumulation of water inside the store, and the high traffic area near the entrance was dry when Benson came through the doors. Thus, Wal-Mart showed that its inspection procedures, as actually followed, were adequate to guard against any hazards to its customers posed by the rainfall earlier in the day. See *Winn-Dixie Atlanta v. Bianco*, 204 Ga. App. 292, 293 (418 SE2d 819) (1992) (defendant acted with reasonable care under the circumstances by inspecting and mopping the entrance way to the store on rainy days and by mopping dry the area where plaintiff fell 20 to 30 minutes before her fall);

10

*Hagin v. Winn-Dixie Stores*, 180 Ga. App. 303, 303-304 (348 SE2d 766) (1986) (where proprietor showed that its employees inspected the floor every 20 minutes to one hour to check for accumulations of water on rainy days, and the floors had been cleaned minutes before plaintiff's fall, the employees took reasonable steps to keep floor mopped). Compare *Smith v. Toys "r" Us*, 233 Ga. App. 188, 192 (504 SE2d 31) (1998) (as there was no proof of inspection between 9:30 a.m. and 11:00 a.m., when plaintiff slipped in a puddle of water inside the store, a jury could find the proprietor had constructive knowledge of the hazard).

Although Benson might have slipped on a clear liquid substance other than rainwater, the evidence shows that the area where Benson fell was inspected and cleaned less than 30 minutes before she fell, and that before her fall Wal-Mart was actively pursuing an inspection procedure adequate to address the presence of liquid near the entrance to the store, whatever the source and nature of the liquid. Accordingly, we conclude that Wal-Mart's procedures were, under the circumstances, reasonable as a matter of law. See *Hopkins v. Kmart Corp.*, 232 Ga. App. 515, 517-518 (2) (502 SE2d 476) (1998) (where manager inspected check-out lane every 30 minutes and checked the area where the plaintiff fell 30 minutes beforehand, proprietor met burden of showing compliance with reasonable inspection procedures)

11

(physical precedent only); *Doak v. U. S. Prime Property, Inc.*, 220 Ga. App. 564, 566 (469 SE2d 812) (1996) (inspections of common area of shopping mall every half hour was reasonable); *Drake v. Kroger Co.*, 213 Ga. App. 72, 72-73 (1) (443 SE2d 698) (1994) (where plaintiff slipped on an unidentified wet substance in a supermarket, and evidence showed on the day in question co-manager performed his duties and patrolled the store on average of once every 30 minutes and saw no spills or evidence of a foreign substance or liquid, supermarket showed that it had adhered to a reasonable inspection program). Compare *Davis v. Bruno's Supermarkets, Inc.*, 263 Ga. App. 147, 150 (2) (587 SE2d 279) (2003) (where plaintiff slipped in a puddle of clear liquid the size of a dinner plate in the middle aisle of a supermarket, and the area had been inspected 30-40 minutes beforehand, supermarket's inspection procedures were not shown to be reasonable as a matter of law). Because Wal-Mart established that it had followed a reasonable inspection procedure, the burden shifted to Benson to show how long the liquid had been on the floor. See *Daniel v. John Q. Carter Enterprises*, 218 Ga. App. 223, 226 (460 SE2d 838) (1995). Benson does not show "that the liquid had been on the floor for a period of time sufficient for it to have been discovered by a reasonable inspection." Id. It follows that there was an absence of

12

evidence that Wal-Mart had superior knowledge of the alleged hazard, and that Wal-Mart was therefore entitled to summary judgment. Id.

2. Wal-Mart and Ferrell also contend that, because Ferrell was not the owner or occupier of the Wal-Mart where Benson fell and there is no evidence of his individual negligence, he is entitled to summary judgment. See *Dempsey v. Southeastern Indus. Contracting Co.*, 309 Ga. App. 140, 144 (3) (709 SE2d 320) (2011) (generally, "an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein") (citation and punctuation omitted). Benson conceded below that Ferrell, a store manager, was entitled to summary judgment, and she again concedes the issue on appeal. Accordingly, the trial court erred in denying summary judgment to Ferrell.

3. Wal-Mart's other claim of error is moot.

*Judgment reversed. Andrews and Rickman, JJ., concur.*