**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 24, 2014**

# In the Court of Appeals of Georgia

A14A1253. INGLES MARKETS, INC. v. CARROLL.

MᴄMɪʟʟɪᴀɴ, Judge.

Deborah Ann Carroll filed suit against Ingles Markets, Inc. ("Ingles"), alleging that Ingles was liable to her for injuries she received when a child ran into her and knocked her down while she was shopping at an Ingles store in Villa Rica, Georgia. Following discovery, Ingles filed a motion for summary judgment, which the trial court denied. This interlocutory appeal followed. Because there is no evidence that Ingles had either actual or constructive knowledge of the hazard at issue, we reverse the trial court's denial of summary judgment to Ingles.

We review the denial of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant. See *Whitfield v. Tequila Mexican Restaurant No. 1, Inc.*, 323 Ga. App. 801, 802 (2) (748 SE2d 281) (2013). So viewed,

the record shows that on February 11, 2012, Carroll was grocery shopping at an Ingles store in Villa Rica, Georgia. Right before the incident, Carroll was exiting the cereal aisle and on her way to get milk. As she was walking, she saw, from the corner of her eye, a young boy coming towards her. She noticed that he was "walking fast." Carroll testified that the next thing she knew, he had run into her and knocked her to the ground.[1] The boy, who appeared to be around 11-13 years old, was carrying a bag of charcoal as he was coming out of an aisle that contained items such as plates, cups, and charcoals.

In her deposition, Carroll acknowledged that she had been visiting that particular Ingles approximately three times per week since it had opened and she had never seen any children running in the store. She always found the store to be well kept and clean, and the employees were always helpful. Although Carroll had "skipped around" the store on the day in question and was almost finished with her shopping at the time of her fall, she had not previously seen the boy.

Andy Lindgren, the Villa Rica store manager, testified that he personally walks around the entire store on a daily basis, multiple times per day. At a minimum, he

---

[1] The boy and his parents were named in the complaint. However, each defaulted, and none is a party to this appeal.

does this at 8:00 a.m., 12:00 p.m., and 5:00 p.m. Ingles also has a policy that requires one of the customer service managers to walk through the store every two hours and to maintain a "Store Sweep Log" of these inspections. During a "sweep," a manager will walk the store's entire perimeter to make sure that there are "no slip hazards, no trip hazards, no water on the floor, [and] nothing that would cause" any injuries. In addition, there are generally two to five stock clerks working in the main grocery area who are also instructed to keep a look out and clear any hazards on the floor at any time. The employees would also look for any children running up and down the aisles. Lindgren specifically instructs his employees that if they see a child running, they are to instruct the child's parent(s) to make sure the child stops running, and if the running continues, they should be asked to leave. He had never asked a customer to leave the store because of a child continuing to run after being warned, and could only recall one other time when he had to ask a child to stop running in the store.

At the time of the incident, Lindgren was assisting with stocking in a back room of the store. He later happened upon one of the customer service managers completing an incident report with Carroll, the boy, and his parents. He had personally never seen the boy before and learned that none of his employees had seen the boy running before the fall. At his deposition, Lindgren identified the Store

3

Sweep Log maintained in February 2012, which indicated that, on February 11, two of the store's customer service managers had performed all of the required "sweeps," including one at 12:00 p.m. The incident report shows that Carroll fell at approximately 12:30 p.m.

1. In related enumerations of error, Ingles argues on appeal that the trial court erred in denying its motion for summary judgment because there is no evidence that Ingles had superior knowledge that the child was running in the store. We agree. As we have often stated,

> [i]n premises liability cases, proof of a fall, without more, does not give rise to liability on the part of a proprietor, because the true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitee to an unreasonable risk of harm.

(Citations, punctuation, and emphasis omitted.) *Drew v. Istar Financial, Inc.*, 291 Ga. App. 323, 324-325 (661 SE2d 686) (2008).

A proprietor's knowledge of the risk of harm may be actual or constructive. "Constructive knowledge may be based either on evidence that the dangerous condition lasted so long that the defendant should have discovered it, or on evidence that an employee of defendant was in the immediate vicinity and could have easily

4

seen the problem." (Citation and punctuation omitted.) *Herrin v. Peeches Neighborhood Grill & Bar, Inc.*, 235 Ga. App. 528, 532 (1) (509 SE2d 103) (1998).

In support of its contention that it had no notice of any hazard, Ingles points to the similar facts in *Belk-Hudson Co. v. Davis*, 132 Ga. App. 237 (207 SE2d 528) (1974), in which the plaintiff brought suit against a store after she was knocked down by "youths who were running, pushing and shoving" inside the store. Id. at 237. This Court explained that

> [i]t is the duty of one who invites members of the general public to come to his place of business to protect such customers or invitees from injury caused by misconduct of his own employees in the conduct and scope of his business, and from the misconduct of other persons who come upon the premises.

(Citation and punctuation omitted.) Id. at 238. However, the "duty of interference on the proprietor's part does not begin until the danger is apparent, or the circumstances are such as would put an ordinarily prudent man on notice of the probability of danger." (Citation and punctuation omitted.) Id. at 238. Moreover, "in the absence of extraordinary circumstances which make it appear likely that a customer may suffer injuries through the pushing of other customers, there exists no duty of the proprietor to provide attendants, ushers, or other supervisory personnel to safeguard customers

5

against such an exigency." (Citation and punctuation omitted.) Id. at 240 (where there was no evidence that defendant's employees had any knowledge children were running, pushing or shoving, plaintiff failed to show defendant had superior knowledge of any dangerous condition in sufficient time to correct it, and the trial court therefore erred in denying defendant's motion for directed verdict).

The record before us is devoid of any evidence that Ingles had either actual or constructive knowledge of the child running in the store. Carroll argues, nonetheless, that Ingles' inspection procedure is deficient and that Ingles should therefore be charged with constructive knowledge. Although she concedes that Ingles "has no special obligation to protect its customers from children, or to keep a constant lookout," she maintains that 30 minutes passed between Ingles' last "sweep" of the store and the time that she fell, thus creating a jury question as to whether Ingles' inspection procedures were reasonable. However, Carroll fails to establish how long the child may have been running or that a more rigorous inspection procedure would have been able to prevent her fall. To the contrary, based on her own testimony – that when she initially saw the child out of the corner of her eye, he was not running, but "walking fast" – the child could only have been running a very short time before he ran into her. Thus, only a constant patrol – the type of procedure we have specifically

6

declined to impose on proprietors under normal circumstances – could have possibly prevented her injury here. See, e.g., *Ginn v. Grothere*, 220 Ga. App. 661, 663 (469 SE2d 876) (1996) (proprietor generally under no duty to patrol the premises continuously); *Congleton v. Starlite Skate Center, Inc.*, 175 Ga. App. 438, 440 (333 SE2d 677) (1985) (same).

Moreover, the foreign substance slip and fall cases on which Carroll relies to argue that Ingles' inspection procedure was unreasonable are factually distinguishable. See *Super Discount Markets. v. Clark*, 213 Ga. App. 132, 133-134 (443 SE2d 876) (1994); *Gilbert v. Automotive Purchasing Svc.*, 254 Ga. App. 770 (563 SE2d 906) (2002). A foreign substance that falls onto the floor and stays in one place is clearly a different type of hazard than the sudden, intervening act of a third party. See, e.g., *Roberts v. Wal-Mart Stores, Inc.*, 287 Ga. App. 316, 317-318 (651 SE2d 464) (2007) ("If a third party's misconduct causes injury to a plaintiff while on the premises, the inquiry is whether the proprietor had superior knowledge of the danger that a third party would so act.") (citation omitted); *Elliott v. Burkhalter*, 173 Ga. App. 749, 750 (327 SE2d 858) (1985) ("If the altercation and resulting injury happened suddenly and without warning and the defendant could not, by the exercise of reasonable care, have discovered or prevented it, there can be no recovery.")

(citations and punctuation omitted); *Davis*, 132 Ga. App. at 238 (3) ("where the proprietor has no notice of dangerous conduct on the part of customers or third persons on the occasion in question, he cannot be held liable for injuries to an invitee resulting from that conduct"). See also *Whitfield*, 323 Ga. App. at 803 (2) ("But even if an intervening criminal act may have been reasonably foreseeable, the true ground of liability is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm.") (citations and punctuation omitted); *W. D. Enterprises, Inc. v. Barton*, 218 Ga. App. 857, 858 (463 SE2d 529) (1995) ("A proprietor is not liable for injuries to an invitee caused by unforeseeable, remote or unusual events such as the intervening acts of a third party.") (citation and punctuation omitted).

We recognize, of course, that issues of premises liability are generally not susceptible of summary adjudication; however, we conclude that the evidence in this case is "plain, palpable, and undisputed" and summary judgment is therefore appropriate. *Dickerson v. Guest Svcs. Co. of Va.*, 282 Ga. 771, 771-772 (653 SE2d 699) (2007). Accordingly, we reverse the trial court's denial of summary judgment to Ingles.

*Judgment reversed. Phipps, C. J., and Ellington, P. J., concur.*

8