**FOURTH DIVISION**
**BARNES, P. J.,**
**RAY, and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

April 29, 2015

# In the Court of Appeals of Georgia

A15A0666. BARBOUR-AMIR v. COMCAST OF GEORGIA/VIRGINIA, INC.

BARNES, Presiding Judge.

Alesia Barbour-Amir filed this premises liability action against Comcast of Georgia/Virginia, Inc. ("Comcast"), alleging that she was injured when she tripped over a child who was sitting on the floor behind her in a Comcast store. After discovery, Comcast filed a motion for summary judgment, which the trial court granted. Because there is no evidence that Comcast had actual or constructive knowledge of the hazard posed by the child, we affirm the grant of summary judgment to Comcast.

Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). A defendant can prevail on summary judgment

by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [the] plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of [the] plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.

*Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We review the grant of summary judgment de novo and view the evidence in the light most favorable to the nonmovant. *Hood v. Todd*, 287 Ga. 164, 165 (695 SE2d 31) (2010).

So viewed, the evidence showed that on July 5, 2010, Barbour-Amir walked into a Comcast store and got in line to pay a bill. The store was narrow and crowded, and several customer service representatives were assisting customers from behind separate teller windows. The store also had a security guard on the premises to protect the property, staff members, and customers and to maintain order inside the store.[1] While monitoring the surroundings, the guard would stand inside the store along the wall or at the front door.

---

[1] The security guard was employed by a third-party security firm that contracted with Comcast to provide security at its store. Because, as explained below, there is no evidence that the guard had actual or constructive knowledge of any hazard posed by the child, we do not address whether or to what extent Comcast could have been held liable based on the guard's conduct.

2

When Barbour-Amir reached the front of the line, the security guard directed her to one of the teller windows. After Barbour-Amir paid her bill at the teller window, she began turning around to leave the store. Mid-turn, however, she tripped over a young child who was sitting on the floor behind her and fell to the floor, injuring her ankle, knees, and lower back. The child was in the store with his mother, and their identities remain unknown.

In her deposition, Barbour-Amir testified that the child had not been sitting behind her when she walked up to the teller window, that she was unsure how long she had stood at the window to pay the bill, and that she did not know how long the child had been there before her fall. Barbour-Amir further testified that the child was not "creating a scene or being disruptive" in any way while in the store. In fact, she had not noticed the child at all while she was standing in line prior to the accident.

In her deposition, the customer service representative who assisted Barbour-Amir at the teller window testified that she had not seen the child seated behind Barbour-Amir before her fall. According to the representative, "typically the customers are in front of you and they're blocking your view as to . . . what's going on behind them."

The store security guard testified in his deposition that he did not remember if there were any children "anywhere around" when the accident occurred. The guard further testified that he had not seen any children acting unruly that day and had not received any complaints from customers about any children before the accident.

In an affidavit, a Comcast official who had conducted an internal investigation for the company averred that there had been no prior incidents of children causing customers to trip or fall in the store. Nor were there any prior complaints about children "sitting, running, engaging in horseplay, or otherwise posing a risk of harm to anyone" there.

On appeal, in several related enumerations of error, Barbour-Amir contends that the trial court erred in granting summary judgment to Comcast because a genuine issue of material fact exists as to whether the security guard and/or customer service representatives in the store had notice that the child was sitting behind her and should have intervened to prevent her injury. We disagree.

> As we have often stated, in premises liability cases, proof of a fall, without more, does not give rise to liability on the part of a proprietor, because the true basis of a proprietor's liability for personal injury to an invitee is the proprietor's superior knowledge of a condition that may expose the invitee to an unreasonable risk of harm.

(Citation and punctuation omitted.) *Ingles Markets v. Carroll*, 329 Ga. App. 365, 367 (1) (765 SE2d 45) (2014).

In determining whether a proprietor had superior knowledge of the hazardous condition, we note that cases involving the conduct of customers or their children differ from slip-and-fall cases involving foreign substances or static conditions. "A foreign substance that falls onto the floor and stays in one place is clearly a different type of hazard than the sudden, intervening act of a third party," *Ingles Markets*, 329 Ga. App. at 368 (1), and a proprietor cannot be held liable for injuries caused to an invitee by a third party whose conduct occurred without warning and was unforeseeable. *W.D. Enterprises v. Barton*, 218 Ga. App. 857, 858 (463 SE2d 529) (1995). Rather, a proprietor has a duty to intervene to protect invitees from harm only if the danger posed by the third party is apparent to the proprietor or would have been apparent to a reasonably prudent person under like circumstances. See *Elliott v. Burkhalter*, 173 Ga. App. 749 (327 SE2d 858) (1985) ("Knowledge by the owner or occupier or his employee of the dangerous condition created by a third person is a prerequisite to recovery.") (citation and punctuation omitted). "Thus where the proprietor has no notice of dangerous conduct on the part of customers or third persons on the occasion in question, he cannot be held liable for injuries to an invitee

5

resulting from that conduct." *Belk-Hudson Co. v. Davis*, 132 Ga. App. 237, 238 (3) (207 SE2d 528) (1974).

In light of this precedent, "the issue becomes whether [Comcast] had notice of the dangerous conduct on the part of the child on the occasion in question." (Citation, punctuation, and emphasis omitted.) *Elliott*, 173 Ga. App. at 749 (2). A proprietor's knowledge of the danger may be actual or constructive, see *Ingles Markets*, 329 Ga. App. at 367 (1), and thus we turn to whether there was any evidence that Comcast had actual or constructive knowledge of the alleged hazard posed by the child.

1. *Actual Knowledge*. There is no evidence in the record before us that Comcast had actual knowledge of the child sitting on the floor behind Barbour-Amir before she fell. As previously noted, the customer service representative who assisted Barbour-Amir at the teller window testified that she did not see the seated child before the fall, and the store security guard did not recall whether there were any children where the accident occurred. Depositions were not taken of any of the other customer service representatives who had been on duty or of any other customers who had been in the store.

Barbour-Amir argues, however, that there was sufficient evidence for a jury to infer that one or more of the customer service representatives and/or the store security

guard had actual knowledge of the child seated behind her. Specifically, in arguing that one of the customer service representatives must have had actual knowledge of the seated child, Barbour-Amir relies upon testimony from the store security guard that he had been behind the teller windows on past occasions and would "assume" that the representatives "probably can see the whole floor" when assisting customers. Barbour-Amir also argues that the customer service representative who assisted her at the teller window could see the floor area where the child was sitting based upon the representative's testimony that she could see Barbour-Amir's knee on the ground as she was getting up from the floor after the fall.

In arguing that the security guard must have had actual knowledge of the seated child, Barbour-Amir relies upon testimony from the guard that, if he had been standing in the store where Barbour-Amir said he was standing at the time of the accident, he "maybe" could have seen the floor area if he had been in that "exact position," if his eyes had not been "wandering around the store, watching other people." The guard also noted, "When it does get crowded, . . . my eyes can't be everywhere at one time."

The testimony of the security guard is simply too speculative to support an inference that either he or the customer service representatives had actual knowledge

of the child sitting behind Barbour-Amir before her fall. Likewise, it would be too speculative to infer that the customer service representative could see the floor area where the child was sitting as she assisted Barbour-Amir at the teller window, based solely upon the representative's testimony that she could see Barbour-Amir's knee on the floor *after* the accident had occurred, when no one was at the teller window. "Speculation that raises a mere conjecture or possibility is not sufficient to create even an inference of fact for consideration on summary judgment." *Johns v. Housing Auth. for City of Douglas*, 297 Ga. App. 869, 872 (678 SE2d 571) (2009). See *Barich v. Cracker Barrel Old Country Store*, 244 Ga. App. 550, 552 (1) (536 SE2d 221) (2000) (summary judgment properly granted to restaurant where store employee's "statement show[ed] speculation, not actual knowledge"); *Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (512 SE2d 2) (1999) (summary judgment properly granted to grocery store because inference that store employee had actual knowledge of the hazard "cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility"). Accordingly, Barbour-Amir failed to present evidence from which a jury could find that Comcast had actual knowledge of the seated child.

2. *Constructive Knowledge.* Nor has Barbour-Amir come forward with evidence that Comcast had constructive knowledge of the hazard posed by the seated child. There are two principle ways to demonstrate constructive knowledge: (a) through evidence that the hazardous condition lasted so long that it would have been discovered and removed if the proprietor had exercised reasonable care in inspecting the premises, or (b) through evidence that an employee of the defendant was in the immediate vicinity of the hazardous condition and could have easily seen and corrected the hazard. See *Ingles Markets*, 329 Ga. App. at 367 (1); *Benefield v. Tominich*, 308 Ga. App. 605, 608 (1) (708 SE2d 563) (2011). Neither circumstance exists in this case.

(a) Barbour-Amir cannot show that the child was seated behind her for so long that Comcast should have discovered the hazard posed by the child through a reasonable inspection procedure. There is no evidence in the record as to how long the child was seated behind Barbour-Amir, and there is no evidence that there were any complaints about the child earlier that day or any similar prior incidents at the store involving customers tripping over children. Furthermore, the evidence established that Comcast had a reasonable inspection procedure that it followed to protect the safety of its customers and maintain order in its store, namely, the

9

presence of the security guard on the premises. Under these circumstances, Barbour-Amir failed to show that her tripping over the seated child was anything other than "a sudden and unexpected occurrence" for which there could be no recovery. *Elliott*, 173 Ga. App. at 750 (2) (customer injured by child bicycling on store sidewalk could not recover on premises liability claim because the episode "happened suddenly and without warning") (citation and punctuation omitted). See *Ingles Markets*, 329 Ga. App. at 368 (1) (customer injured by child running through store could not recover on premises liability claim because customer "fail[e]d to establish how long the child may have been running or that a more rigorous inspection procedure would have been able to prevent her fall"); *Belk-Hudson Co.*, 132 Ga. App. at 239 (3) (b) (customer injured by children running, pushing, and shoving in store could not recover on premises liability claim because there was no "evidence to indicate how long they may have been running and playing").

(b) Barbour-Amir argues, however, that the customer service representatives and/or the security guard were in the immediate vicinity of the seated child and thus had constructive knowledge of the hazard that the child posed to her. But showing that an employee was merely working in the immediate area of the alleged hazard is not enough; the employee must have been in a position to have easily seen the hazard

10

and intervened to correct it before the accident occurred. *Mucyo v. Publix Super Markets*, 301 Ga. App. 599, 601 (1) (688 SE2d 372) (2009). For the same reasons discussed supra in Division 1, Barbour-Amir has offered only speculation and conjecture regarding the ability of the customer service representatives and security guard to have easily seen the seated child from their vantage point before the fall.

For these combined reasons, we conclude that Barbour-Amir cannot show that Comcast had actual or constructive knowledge of the hazard posed by the seated child and thus cannot succeed on her premises liability claim. "We recognize, of course, that issues of premises liability are generally not susceptible of summary adjudication; however, we conclude that the evidence in this case is plain, palpable, and undisputed and summary judgment is therefore appropriate." (Citation and punctuation omitted.) *Ingles Markets*, 329 Ga. App. at 369 (1). Consequently, we affirm the trial court's grant of summary judgment to Comcast.

*Judgment affirmed. Ray and McMillian, JJ., concur*.