**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN, P. J., and BROWN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 2, 2021**

# In the Court of Appeals of Georgia

A20A1923. RIVER PLACE AT PORT ROYAL CONDOMINIUM ASSOCIATION, INC. v. SAPP.

DILLARD, Presiding Judge.

In this premises-liability action, Shelisa Sapp sued River Place at Port Royal Condominium Association, Inc., where she worked as a security guard. Specifically, she alleges that River Place breached a duty it owed her as an invitee, with the result being that she slipped on water that leaked from an overhead pipe onto the floor of a break room and suffered injuries. River Place moved for summary judgment, which the trial court denied. In this interlocutory appeal, River Place contends that the trial court erred in concluding that genuine issues of material fact exist as to whether it had superior knowledge of the hazard and whether Sapp failed to exercise ordinary care for her own safety. For the reasons set forth *infra*, we reverse.

Viewed in the light most favorable to Sapp (*i.e.*, the nonmoving party),[1] the record shows that River Place is the condominium owner's association that manages the River Place at Port Royal Condominiums in Augusta. Because it does not have its own employees, River Place hires third-party contractors to perform the various functions required to maintain a condominium complex, including security. And in May 2012, River Place hired Sizemore Security Services to provide safety officers for the premises. According to the Handbook and Operating Manual for River Place, a safety officer's responsibilities at the condominium complex entail providing security, concierge services, and routine maintenance inspections, including checking for water leaks on the premises.

In June 2012, Sizemore hired Sapp to work as a safety officer at River Place; and, over the course of a year, she did so without incident. On August 18, 2013, Sapp arrived at River Place around 8:00 a.m. for the start of her shift. Shortly after arriving, she went to the break room—located on the fifth floor of the complex—to place her lunch in the refrigerator. As she entered the break room, the overhead light—which was controlled by a motion sensor—illuminated, and Sapp walked across the room,

---

[1] *See, e.g., Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016).

2

put her lunch in the refrigerator, and exited, without noticing any hazard. And because she was busy that day, Sapp did not return to the break room until around 4:00 p.m. But this time, as she entered the room, she was walking at a brisk pace, so the motion sensor did not illuminate immediately. Then, just as the light illuminated, Sapp felt herself suddenly slipping across the floor before falling.

After sitting up, Sapp noticed that the floor was wet and water was dripping down onto the floor from an overhead pipe—something she had never previously observed. She then got up and walked back to the security desk in the complex's lobby. At that point, she called Jacqueline Haab—who was the vice-president of the River Place board—to report her accident and the water hazard in the break room. And upon arriving at the security desk, Haab helped bandage Sapp's knee, which she injured in the fall, and then went to the break room to clean up the water. There, Haab noticed a spot or two on the floor, but not enough to be absorbed by the paper towel she used. And although she could not see high enough to determine if the pipes had moisture on them, Haab surmised that those pipes were the source of drops on the floor.

Subsequently, Sapp filed a lawsuit against River Place, alleging that it breached a duty it owed her as an invitee when it failed to keep its premises free from the

hazard caused by the leaky pipes in the break room, with the result being that she slipped on water that had dripped onto the floor and suffered a serious knee injury. River Place filed an answer, and discovery ensued, during which the parties deposed Sapp and Haab. In addition, the parties deposed Richard Eargle, an independent contractor, who often performed maintenance work at the complex. And while Eargle was not an employee of Sizemore Security, he reported all maintenance issues to Sizemore's site supervisor for River Place, Melvin Begley.

After discovery closed, River Place filed a motion for summary judgment, which the trial court denied, finding that genuine issues of material fact remained as to whether River Place had superior knowledge of the hazard and whether Sapp failed to exercise ordinary care for her own safety. Thereafter, River Place successfully sought a certificate of immediate review and filed an application for interlocutory appeal, which we granted. This appeal follows.

Summary judgment is, of course, proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] Whether summary judgment is granted or

---

[2] OCGA § 9-11-56 (c).

denied, that decision enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself that the requirements of OCGA § 9-11-56 (c) have been met.[3] And in conducting this *de novo* review, we are charged with "viewing the evidence, and all reasonable conclusions and inferences drawn from the evidence in the light most favorable to the nonmovant."[4]

Turning to the issue of premises liability involved in this case, it is well established that a proprietor has a statutory duty to exercise ordinary care to keep its premises safe,[5] which "includes inspecting the premises to discover possible dangerous conditions of which the [proprietor] does not have actual knowledge, and

---

[3] *See Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met."); *Shields v. RDM, LLC*, 355 Ga. App. 409, 412-13 (1) (844 SE2d 297) (2020) (noting that this Court reviews "a grant or denial of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party" (punctuation omitted)).

[4] *Benefield v. Tominich*, 308 Ga. App. 605, 607 (1) (708 SE2d 563) (2011) (punctuation omitted); *accord Swanson*, 335 Ga. App. at 810; *Vratsinas Constr. Co. v. Chitwood*, 314 Ga. App. 357, 357-58 (723 SE2d 740) (2012).

[5] *See* OCGA § 51-3-1 ("Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.").

5

taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises."[6] But in order for a plaintiff to recover damages for injuries sustained in a premises-liability action, an invitee must prove "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier."[7] Consequently, in a premises-liability case, the mere fact that Sapp was injured, without more, "does not give rise to liability on the part of [River Place]."[8] Rather, the true basis of a property owner's liability for an injury to its invitee is "the owner's *superior knowledge of a condition that may expose the invitees to an unreasonable risk of harm*."[9] We are, of course, mindful that in a premises-liability case, "issues of the defendant's negligence, the plaintiff's negligence, and the plaintiff's lack of ordinary care for his

---

[6] *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997) (citations omitted); *accord Benefield*, 308 Ga. App. at 608 (1)

[7] *Robinson*, 268 Ga. at 748-49 (2) (b).

[8] *Williams v. Johnson*, 344 Ga. App. 311, 315 (1) (809 SE2d 839) (2018) (punctuation omitted); *accord Bartlett v. McDonough Bedding Co.*, 313 Ga. App. 657, 658 (722 SE2d 380) (2012).

[9] *Williams*, 344 Ga. App. at 315 (1) (punctuation omitted).

own safety are generally not susceptible of summary adjudication."[10] Nevertheless, when, as here, "the evidence is plain, palpable, and undisputable the trial court can [and should] conclude that a party is entitled to judgment as a matter of law."[11]

1. River Place contends that the trial court erred in concluding that genuine issues of material fact exist as to whether it had superior knowledge of the hazard allegedly caused by water leaking onto the floor of the break room from overhead pipes. We agree.

(a) *Actual knowledge*. A proprietor's knowledge of the danger "may be actual or constructive[.]"[12] And here, there is no evidence River Place had actual knowledge that water had accumulated on the floor of the break room or that the overhead pipes in the room leaked or otherwise dripped water onto the floor. Indeed, Sapp testified that she did not notice any water on the floor of the break room when—upon arriving to begin her work shift—she entered the room to place her lunch in the refrigerator. Jacqueline Haab also testified that, prior to the incident, no one—including Sapp or

---

[10] *Id.* at 316 (1) (punctuation omitted); *accord Robinson*, 268 Ga. at 748 (2) (b).

[11] *Williams*, 344 Ga. App. at 316 (1) (punctuation omitted); *accord Kennestone Hosp., Inc. v. Harris*, 285 Ga. App. 393, 395 (646 SE2d 490) (2007).

[12] *Barbour-Amir v. Comcast of Ga./Va., Inc.*, 332 Ga. App. 279, 282 (772 SE2d 231) (2015) (punctuation omitted).

7

any other safety officer—ever informed her that water had accumulated on the floor or that the overhead pipes in the break room were leaking. Additionally, Sapp's supervisor, Begley, averred that in his twelve years as site supervisor for River Place, he never observed or was made aware of any water leaks in the break room.

Nevertheless, Sapp maintains that River Place had actual knowledge of the overhead pipes leaking water onto the break room floor, relying upon the testimony of the handyman, Eargle. In his deposition, Eargle testified that in his time working as a handyman at River Place, he never noticed overhead pipes "sweating," did not recall ever seeing water leaking onto the floor in the break room, and would have reported it to Begley if he had observed such a leak. But when pressed during his deposition by Sapp's counsel if he remembered telling Sapp's former counsel—apparently in an interview that was not transcribed or included in the record—that he had seen pipes sweating at some point in time, Eargle responded that he did *not recall* making such a statement but would not dispute any record to the contrary. And as a result of this testimony, Sapp claims that there is a genuine issue of material fact as to whether River Place had actual knowledge of water accumulating on the floor of the break room. But this apocryphal evidence is far too speculative to raise an inference that River Place had *actual* knowledge of any such

8

water leaks. Indeed, Eargle's testimony "raises a mere conjecture or possibility" and that is "not sufficient to create even an inference of fact for consideration on summary judgment."[13] Given these circumstances, Sapp failed to present evidence that River Place had actual knowledge of pipes leaking water onto the floor of the break room.[14]

(b) *Constructive knowledge*. Under Georgia law, a plaintiff may demonstrate a proprietor's constructive knowledge of a hazard by showing:

(a) evidence that the hazardous condition lasted so long that it would have been discovered and removed if the proprietor had exercised reasonable care in inspecting the premises, or (b) evidence that an employee of the defendant was in the immediate vicinity of the

---

[13] *Barbour-Amir*, 332 Ga. App. at 283 (1) (punctuation omitted); *see Cowart*, 287 Ga. at 633 (3) (c) ("Summary judgment cannot be avoided based on speculation or conjecture; once the pleadings are pierced with actual evidence, the plaintiff must point to admissible evidence showing a genuine issue of [material] fact.").

[14] *See Barbour-Amir*, 332 Ga. App. at 282-83 (1) (holding that testimony of store's security guard was too speculative to support an inference that either he or customer service representative had actual knowledge of child over whom patron tripped while child was sitting on floor behind patron at teller window); *Barich v. Cracker Barrel Old Country Store*, 244 Ga. App. 550, 552-53 (1) (536 SE2d 221) (2000) (finding that summary judgment was properly granted to restaurant when store employee's statement showed speculation, not actual knowledge); *Lovins v. Kroger Co.*, 236 Ga. App. 585, 586 (1) (a) (512 SE2d 2) (1999) (concluding that summary judgment was properly granted to store because inference that store employee had actual knowledge of the hazard "cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility").

hazardous condition and could have easily seen and corrected the hazard.[15]

Here, there is no evidence that anyone was in the break room at the time of Sapp's accident late in the afternoon (other than Sapp) and, therefore, whether River Place could be deemed to have constructive knowledge of the pipes leaking water onto the floor hinges on whether it exercised reasonable care in inspecting the premises.

In that regard, summary judgment "as to constructive knowledge arising from the duty to inspect is not authorized absent plain, palpable and undisputable proof that customary inspection procedures or cleaning practices were in place, were actually followed and were adequate to guard against known or foreseeable dangers at the time of the patron's alleged injuries."[16] But the length of time the substance must remain on the floor before the owner should have discovered it and what constitutes a reasonable inspection procedure varies with each case, depending upon the nature of the premises, the size of the premises, the number of invitees, the nature of the

---

[15] *All Am. Quality Foods, Inc. v. Smith*, 340 Ga. App. 393, 395 (1) (797 SE2d 259) (2017) (punctuation omitted); *accord Barbour-Amir*, 332 Ga. App. at 283 (2).

[16] *Walmart Stores East, L.P. v. Benson*, 343 Ga. App. 74, 78 (1) (b) (806 SE2d 25) (2017) (punctuation omitted).

10

dangerous condition, and the location of the premises.[17] Moreover, it is well settled that a proprietor is under no duty to "patrol the premises continuously in the absence of facts showing that the premises are unusually dangerous."[18]

In this case, it is undisputed that Sizemore tasked its safety officers with patrolling the River Place grounds and report hazards such as water leaks. In fact, Sapp acknowledged that checking the premises for water leaks was included among *her duties* and that there was no water on the break room floor upon her arrival that morning. Furthermore, Sapp presented no evidence that River Place's premises and the break room in particular were unusually dangerous. To the contrary, the evidence demonstrated that the break room was almost never used by residents of the complex and that only safety officers and cleaning staff frequented the area. Thus, Sapp failed to show that the periodic inspection of the premises—*for which she was directly*

---

[17] *See Kroger Co. v. Schoenhoff*, 324 Ga. App. 619, 621 (751 SE2d 438) (2013) (noting that what constitutes a reasonable inspection procedure varies with each case, depending on the nature of the business, the size of the store, the number of customers, the nature of the dangerous condition, and the store's location); *The Augusta Country Club, Inc. v. Blake*, 280 Ga. App. 650, 653 (1) (a) (634 SE2d 812) (2006) (same).

[18] *Brown v. Host/Taco Joint Venture*, 305 Ga. App. 248, 252 (699 SE2d 439) (2010) (punctuation omitted).

11

*responsible*—was inadequate.[19] Indeed, with regard to inspections, "the law requires only the exercise of ordinary care, not extraordinary care."[20] Moreover, under Georgia law, an independent contractor is "expected to determine for [herself] whether [her] place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract."[21] Accordingly, the trial court erred in finding that genuine issues of material fact exist as to whether River Place had superior knowledge of the hazard allegedly caused by water leaking onto the floor of the break room from overhead pipes.

---

[19] *See Quarles v. Ga. Serv. Sys., LLC*, 263 Ga. App. 563, 565 (588 SE2d 338) (2003) (holding that when a slip and fall occurs in an area that the proprietor has no reason to believe is dangerous, the proprietor is under no duty to constantly inspect the area); *Patrick v. Macon Hous. Auth.*, 250 Ga. App. 806, 811-12 (552 SE2d 455) (2001) (holding that because, in contrast to typical cases in supermarkets or restaurants, defendant had no reason to believe conditions in laundry room of apartment complex were unusually dangerous, it had no duty to inspect the floors there more than every two hours).

[20] *Witt v. Ben Carter Props., LLC*, 303 Ga. App. 107, 110 (692 SE2d 749) (2010) (punctuation omitted).

[21] *Forest Cove Apartments, LLC v. Wilson*, 333 Ga. App. 731, 735 (776 SE2d 664) (2015) (punctuation omitted); *accord Herrin v. Peeches Neighborhood Grill & Bar*, 235 Ga. App. 528, 532 (1) (509 SE2d 103) (1998).

2. River Place also contends that the trial court erred in concluding that genuine issues of material fact exist as to whether Sapp failed to exercise ordinary care for her own safety. But given our holding in Division 1 *supra*, that Sapp failed to show that River Place had actual or superior knowledge of the hazard posed by the water in the break room, we need not address this issue.[22]

For all these reasons, we reverse the trial court's denial of River Place's motion for summary judgment.

*Judgment reversed. Rickman, P. J., and Brown, J., concur.*

---

[22] *See Williams*, 344 Ga. App. at 319 (2) (holding that given defendant was entitled to summary judgment because plaintiff had equal, if not superior, knowledge of the hazard that caused his injury, it was unnecessary for this Court to address defendant's remaining, alternative arguments as to why he was entitled to summary judgment).

13