[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-10174

Non-Argument Calendar

_____

VICTORIA CARTER,

Plaintiff-Appellant,

*versus*

WAL-MART STORES EAST, LP,
JOHN DOES (1-3),
ABC CORPORATION (1-3),

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

D.C. Docket No. 1:19-cv-03907-WMR

————————————

Before WILSON, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Victoria Carter sued Wal-Mart Stores East, LP, after she slipped and fell in a puddle on the floor of the produce section. The district court granted summary judgment in Wal-Mart's favor and denied Ms. Carter's motion for sanctions. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ms. Carter fell while shopping in a Georgia Wal-Mart one Saturday evening in June 2018. Wal-Mart had an official policy to prevent slip hazards on the floor: employees were supposed to conduct an hourly "safety sweep" to look for spills, continuously use a push mop to sweep the whole store, and always look for spills as they walked down the aisles. But on the night Ms. Carter fell, nobody conducted a 7 p.m. safety sweep. Nobody was using the push mop, which leaned unmanned against a pole. And the nearest employee—Yvonne Simpson—had not been on the lookout for spills as she walked through the store.

A store camera captured the lead up to Ms. Carter's slip and fall. At 6:58 p.m., a young girl spilled some soda on the floor of the store's produce section. At 7:09 p.m.—not quite twelve minutes later—Ms. Carter slipped in the soda puddle, fell to the ground, and hurt her knees in the process. Ms. Simpson had walked through

the produce section several minutes before the soda was spilled, but no employee saw or knew about the spill until Ms. Carter fell.

Ms. Carter sued Wal-Mart under Georgia tort law for negligently failing to maintain its premises. During discovery, one of Wal-Mart's attorneys contacted Ms. Simpson and got her her to sign a declaration saying that she had seen the video of Ms. Carter's accident, that she had inspected the floor of the produce section earlier that night, and that she and other employees regularly "zoned" the floor to look for spills. Wal-Mart moved for summary judgment against Ms. Carter and submitted the declaration in support; part of its argument was that it had conducted appropriate inspection procedures the night Ms. Carter fell.

The district court reopened discovery so Ms. Carter could depose Ms. Simpson, who testified that she could not read well and had not understood the declaration she signed (although she hadn't told Wal-Mart's lawyer she couldn't read well). She also testified—contrary to the declaration—that she had never seen the video of the incident, that she had not looked for hazards when she walked through the store, and that it was uncommon for Wal-Mart employees to zone the floor.

After the deposition, Wal-Mart's counsel withdrew Ms. Simpson's declaration. Ms. Carter, in turn, filed a motion to sanction Wal-Mart by striking its answer to the complaint. She argued that Wal-Mart had knowingly submitted a false declaration that formed a substantial basis for its motion for summary judgment.

Wal-Mart obtained new counsel, and the law firm initially representing it instructed the associate involved in the declaration to report herself to the State Bar of Georgia.

The district court granted summary judgment and denied the motion for sanctions. As to Ms. Carter's negligence claim, the district court found that Wal-Mart could not be held liable for a spill that sat for only twelve minutes, regardless of whether Wal-Mart employees had followed the inspection procedure before the spill occurred. As to the sanctions motion, the district court concluded that, while Wal-Mart's counsel had acted unethically, the affidavit was irrelevant to its summary judgment decision and therefore Ms. Carter could not show prejudice. It denied Ms. Carter's motion for sanctions, but it ordered Wal-Mart's counsel to report filing the affidavit to the State Bar of Georgia. Ms. Carter timely appealed.

## STANDARD OF REVIEW

We review de novo an order granting summary judgment. *Patrick v. Floyd Med. Ctr.*, 201 F.3d 1313, 1315 (11th Cir. 2000). At this stage, we "draw[] all inferences in the light most favorable to the non-moving party and recogniz[e] that summary judgment is appropriate only where there are no genuine issues of material fact." *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017) (citing *Rich v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013)); *see also* Fed. R. Civ. P 56(a). An issue is "genuine" where "a reasonable jury could return a verdict for the nonmoving party," and

a fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We review a district court's "decision to deny sanctions . . . for an abuse of discretion." *Peer v. Lewis*, 606 F.3d 1306, 1311 (11th Cir. 2010). "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or bases the decision 'upon findings of fact that are clearly erroneous.'" *Id.* (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1180 (11th Cir. 2005)).

## DISCUSSION

Ms. Carter argues on appeal that the district court erred in granting summary judgment on her negligence claim. She also contends that the district court abused its discretion by denying her motion for sanctions. We address each issue in turn.

### *Premises Liability*

Under Georgia law, landowners have an obligation "to exercise ordinary care in keeping the premises . . . safe" for guests and invitees. Ga. Code Ann. § 51-3-1. A proprietor will be liable in a slip and fall case when it has "actual or constructive" knowledge of a "hazard [that] caused the plaintiff's injury." *All Am. Quality Foods, Inc. v. Smith*, 797 S.E.2d 259, 261 (Ga. Ct. App. 2017). Constructive knowledge of a hazard exists (1) where store employees were in the hazard's "immediate vicinity" and "could have easily seen and corrected" it, or (2) where a hazard was present long

enough that it would have been "discovered and removed" had the proprietor "exercised reasonable care in inspecting the premises." *Barbour-Amir v. Comcast of Ga./Va., Inc.*, 772 S.E.2d 231, 235 (Ga. Ct. App. 2015).

Here, the parties agree that Wal-Mart's employees did not have actual knowledge of the spill that Ms. Carter slipped on. Nor does Ms. Carter argue that a Wal-Mart employee was in the "immediate vicinity" of the spill. *See id.* The only question is whether the twelve minutes between the soda's spilling and Ms. Carter's slipping was long enough for a reasonable jury to find that Wal-Mart would have "discovered and removed" the soda had it "exercised reasonable care." *See id.* Under Georgia law, it was not.

Georgia courts have consistently held that under ordinary conditions, intervals of ten or fifteen minutes are not long enough to put a store owner on constructive notice of a spill. In *Hartman v. Clark*, for example, the plaintiff slipped in a restaurant bathroom on a puddle that had been there between five and ten minutes. 801 S.E.2d 66, 67 (Ga. Ct. App. 2017). There, the court explained that "[r]egardless of when restaurant employees last inspected the restroom, this limited period of time" was legally insufficient to give rise to constructive knowledge of the spill. *Id.* at 67–68. The *All American* court also found that a grocery store owner lacked constructive knowledge of a spill that surveillance video showed was present for seven minutes before a customer's fall. 797 S.E.2d at 262; *see also Smith v. Winn-Dixie Atlanta, Inc.*, 417 S.E.2d 202, 202–03 (Ga. Ct. App. 1992) (affirming summary judgment in a slip-and-

fall case because the "foreign object had not been present for more than 10 to 15 minutes" (marks and citation omitted)); *Super Discount Markets, Inc. v. Clark*,  443 S.E.2d 876, 877 (Ga. Ct. App. 1994) (same).

Ms. Carter attempts to distinguish *Hartman* on the grounds that the bathroom there was "less trafficked" than the produce aisle where she slipped.  But Ms. Carter doesn't point to any evidence for that claim.  And, more importantly, Georgia courts have not distinguished between "cases involving grocery stores, parking lots, and restaurants." *Gleaton v. APAC-Georgia, Inc.*, 491 S.E.2d 138, 141 (Ga. Ct. App. 1997).  In all of those cases, the Georgia courts "have found that 15 or 20 minutes was a legally insufficient amount of time for a proprietor to discover a foreign substance on the floor." *Id.*

Ms. Carter also contends there was a genuine dispute as to constructive knowledge because Wal-Mart employees would have discovered the spill had they followed the store's hourly cleaning schedule.  But the Georgia courts rejected that argument in *Hartman*.  There, as here, the plaintiff argued that "the evidence raise[d] factual questions about [the proprietor's] inspection procedures and whether they were followed." *Hartman*, 801 S.E.2d at 67.  "Regardless of when restaurant employees last inspected the restroom," the *Hartman* court held, the "limited period of time" that the liquid was on the floor "was insufficient as a matter of law to hold that [the proprietor] should have discovered and removed the

liquid prior to [the plaintiff's] fall." *Id.* at 67–68 (quotation omitted).

The plaintiff in *All American* also argued, as Ms. Carter does here, that the grocery store had "failed to establish that it had a reasonable inspection policy in place," so a genuine dispute existed as to the store's constructive knowledge of a spill. *All Am. Quality Foods*, 797 S.E.2d at 262. But, the *All American* court explained, "we fail to see how the inspection policy is relevant to [the plaintiff's] claim because in this somewhat unusual case, the video evidence establishes how long the substance was on the floor before [the plaintiff] fell." *Id.* "[I]t is not always necessary for the proprietor to show compliance with reasonable inspection procedures to establish a lack of constructive knowledge." *Johnson v. Autozone, Inc.*, 465 S.E.2d 463, 466 (Ga. Ct. App. 1995). "In seeking summary judgment, the proprietor may also produce evidence, as [it] did in this case, that the foreign substance had not been on the premises long enough to have been discovered by a reasonable inspection, regardless of whether inspection procedures had been instituted and complied with." *Id.* at 466–67.

Here, also, we have undisputed video evidence establishing how long the substance was on the floor before Ms. Carter fell. Under Georgia law, the twelve minutes the soda was on the floor "was insufficient as a matter of law to hold that" Wal-Mart "should have discovered and removed the liquid prior to" Ms. Carter's "fall," "[r]egardless of when" the produce aisle was last inspected.

*See Hartman*, 801 S.E.2d at 67–68.  Compliance with an inspection policy is not "relevant" in a case where, as here, "the video evidence establishe[d] how long the substance was on the floor" before the fall.  *See All Am. Quality Foods*, 797 S.E.2d at 262.  The soda Ms. Carter slipped on "had not been on the premises long enough to have been discovered by a reasonable inspection, regardless of whether inspection procedures had been instituted and complied with."  *See Johnson*, 465 S.E.2d at 466–67.  The district court thus did not err in granting summary judgment.

## Sanctions

District courts "have the inherent authority to control the proceedings before them, which includes the authority to impose 'reasonable and appropriate' sanctions."  *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1335 (11th Cir. 2002) (quoting *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1545 (11th Cir. 1993)).  But, "to exercise its inherent power[,] a court must find that the *party* acted in bad faith."  *Id.* (emphasis added).  And, even then, the inherent power to impose sanctions "must be exercised with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  To show that the district court abused its discretion in denying sanctions, Ms. Carter must show that it "applie[d] an incorrect legal standard, relie[d] on clearly erroneous factual findings, or commit[ted] a clear error of judgment."  *United States v. Bates*, 960 F.3d 1278, 1288 (11th Cir. 2020) (citation omitted).

The district court did not abuse its discretion.  It found that Ms. Carter hadn't shown Wal-Mart acted in bad faith, and that

finding was not clearly erroneous. Nothing in the record indicates that Wal-Mart knew about the false affidavit, facilitated its submission, or otherwise acted in "*subjective* bad faith," a prerequisite for inherent-power sanctions. *See Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020).

Ms. Carter argues that the district court could have used its inherent power to sanction Wal-Mart for its counsel's bad faith. But that is incorrect. A district court may not sanction a party "because of misconduct by [its] attorney that is not fairly attributable to" the party. *In re Porto*, 645 F.3d 1294, 1304 (11th Cir. 2011), *abrogated in part on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177 (2014)). Even if the district court had the power to impose such a sanction, its direction to Wal-Mart's counsel to report the filing to the State Bar of Georgia sufficed to "vindicate judicial authority" without a more severe sanction. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). The district court was not required to go further, so Ms. Carter hasn't shown an abuse of discretion.

**AFFIRMED.**